Peter L. Carr, IV (SBN 256104)
pcarr@thePLClawgroup.com
Na'Shaun L. Neal (SBN 284280)
nneal@thePLClawgroup.com
**PLC LAW GROUP, APC**
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
Telephone:   (310) 400-5890
Facsimile:    (310) 400-5895

Attorneys for Plaintiff Donnelle Wear

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNELLE WEAR,<br>    Plaintiff,<br><br>vs.<br><br>COUNTY OF LOS ANGELES; and DOES 1 through 10, inclusive,<br>    Defendants. | Case No.<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>1. Interference with Parent-Child Relationship (42 U.S.C. § 1983)<br>2. Custom, Practice or Policy Causing Violation of Civil Rights (42 U.S.C. § 1983) |

Plaintiff DONNELLE WEAR complains of Defendants COUNTY OF LOS ANGELES and DOES 1 through 10, inclusive, as follows:

## JURISIDICTION AND VENUE

1.   This Court has original jurisdiction under 28 U.S.C. §§ 1331, 1343 (a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States that include 42 U.S.C. §1983 and the Fourth, Eighth and Fourteenth Amendments of the United States Constitution.

Wear Complaint     1

**PLAINTIFF'S  COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

2. The venue is proper in the Central District of California pursuant to 28 U.S.C. §§ 1391(b) and (e). This court is proper because Defendants reside in this district and the unlawful actions challenged occurred in this district.

## PARTIES

3. At all relevant times herein, JOSEPH ALAN WEAR (hereinafter referred to as "DECEDENT") was an individual residing in the County of Los Angeles, California.

4. At all relevant times herein, DONNELLE WEAR was an individual residing in the County of Orange, California and is the natural mother to the deceased JOSEPH ALAN WEAR.

5. At all relevant times herein, the Los Angeles Sheriff's Department ("LASD") was a department of the Defendant COUNTY OF LOS ANGELES ("COUNTY"), a public entity duly organized and existing under the laws of the State of California, and was responsible for the hiring, retaining, training and supervision of the conduct, policies and practices of its employees and agents of the LASD and all of its members, agents and employees.

6. At all relevant times, Defendants DOES 1-10, individually and as a peace officers, were duly authorized employees and agents of COUNTY, who were acting under color of law within the course and scope of their respective duties as sworn peace officers and/or deputy sheriffs and/or Special Officers and/or Supervisors (i.e. Sergeants, Lieutenants, Captains, Commanders, etc.) within the complete authority and ratification of their principal, Defendant COUNTY.

7. In doing the acts and failing and omitting to act as hereinafter described, Defendants, individually and as peace officers, were acting on the implied and actual permission and consent of the COUNTY.

/ / /

/ / /

8. At all times mentioned herein, each and every COUNTY defendant was the agent of each and every other COUNTY defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every COUNTY defendant.

9. Plaintiff is unaware of the true names and capacities of those Defendants named herein as DOES 1-10. Plaintiff will amend this Complaint to allege said Defendants' true names and capacities when that information becomes known to Plaintiff. Plaintiff is informed and believes, and thereon alleges that these DOES 1-10 are legally responsible and liable for the incident, injuries, and damages hereinafter set forth, and that each of said Defendants proximately caused the injuries and damages by reason of negligent, careless, deliberately indifferent, intentional, willful, or wanton misconduct, including the negligent, careless, deliberately indifferent, intentional, willful, or wanted misconduct in creating and otherwise causing the incidents, conditions, and circumstances hereinafter set forth, or by reason of direct or imputed negligence or vicarious fault or breach of duty arising out of the matters herein alleged.

## FACTS COMMON TO ALL COUNTS

10. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1-9 as though set forth in full herein.

11. On the afternoon of December 7, 2018, DECEDENT entered the United States Postal Office, located at 7101 South Central Avenue in Los Angeles, California.

12. Plaintiff is informed and believes and thereon alleges that when DECEDENT entered the Post Office, he was carrying his skateboard and gave a postal clerk a taser and can of pepper spray. Then, DECEDENT said something to the effect of, "Help, they're after me. I need help. Can I use the phone?"

13. DECEDENT was apparently delusional and in an agitated state of mind.

///

14. DECEDENT ran out of the Post Office and was followed by two U.S. Postal Service Inspectors/ Police Officers/ Security Officers.

15. DECEDENT ran around the area near/ at the Post Office. DECEDENT then climbed up a tree and jumped down. After jumping out of the tree, DECEDENT ran across the streets while engaging pedestrian traffic.

16. DECEDENT was in obvious need of medical intervention and attention.

17. One or more civilians and one or more Postal Service Inspectors/ Police Officers/ Security Officers were in the process of restraining DECEDENT, when a presently unidentified LASD deputy sheriff(s), DOES 1-10, inclusive, was/were driving by the subject incident.

18. On information and belief, LASD deputies, DOES 1-10, failed to exercise ordinary care when restraining DECEDENT, and used unreasonable and excessive force upon him, including lethal restraints that resulted in his death.

19. The actions of LASD deputy sheriffs, DOES 1-10, inclusive, caused DECEDENT to suffer and sustain a cardiac arrest, resulting in his death.

20. Thereafter, DECEDENT was taken by City of Los Angeles paramedics to Harbor-UCLA Medical Center in the City of Torrance, California, where he was pronounced dead at 3:22 p.m.

21. At no time during the course of these events did DECEDENT pose any reasonable threat of violence to the Defendant Deputies, nor did he do anything to justify the use of deadly, excessive, unreasonable, unlawful and unnecessary force against him, by the Defendant Deputies.

22. In committing the acts alleged in this complaint, DOE Defendants acted knowingly, maliciously, and with reckless or callous disregard for the constitutional rights of Plaintiff, justifying an award of punitive damages under federal law against each individual defendant.

/ / /

/ / /

## MONELL ALLEGATIONS

23. Based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), COUNTY is liable for all injuries sustained by Plaintiffs set forth herein. COUNTY bears liability because its policies, practices and/or customs were a cause of DECEDENT's death and Plaintiff's injuries. COUNTY and its officials maintained or permitted one or more of the following official policies or customs:

    A. Failure to provide adequate training and supervision to LASD deputies with respect to constitutional limits on the use of deadly force;

    B. Failure to provide adequate training and supervision to LASD deputies with respect to constitutional limits on the use of force and detention;

    C. Failure to adequately investigate, take appropriate corrective action, discipline or retrain officers involved in misconduct;

    D. Selection, retention, and assignment of deputies with demonstrable propensities for excessive force, violence, dishonesty and other misconduct;

    E. Condonation and encouragement of deputies in the belief that they can violate the rights of persons, such as DECEDENT, with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits;

    F. Ratification by the highest levels of authority of the specific unconstitutional acts alleged in this complaint and, in particular, the ratification of conduct and the wrongful death of DECEDENT; and

    G. Failure to train officers and press staff to report accurate information to the public to protect the dignity of all persons and their family members.

## FIRST CAUSE OF ACTION
### Interference with Parent-Child Relationship (42 U.S.C. § 1983)
### (Plaintiff against all Defendants and DOES 1-10, inclusive)

24. Plaintiff incorporates by reference each and every allegation contained in the

foregoing paragraphs, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

25. Plaintiff has a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in her familial relationship with her son, DECEDENT.

26. As a result of the excessive force by Defendants, individually and as peace officers, and the failure of Defendants to intervene, DECEDENT died. Defendants, individually and as peace officers, acting under color of state law, thus violated Plaintiff's constitutional right to be free from unwarranted interference with her familial relationship with DECEDENT.

27. The aforementioned actions of Defendants, individually and as peace officers, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of DECEDENT and Plaintiff, and with purpose to harm unrelated to any legitimate law enforcement objective.

28. As a direct and proximate cause of the acts of Defendants, individually and as peace officers, Plaintiff has also been deprived of the life-long comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of her natural life. Plaintiff is also claiming funeral and burial expenses, loss of gifts and benefits and a loss of financial support.

29. The conduct of Defendants, individually and as peace officers, was malicious, oppressive and in reckless disregard for the rights and safety of DECEDENT and Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to the individual Defendants.

30. Plaintiff seeks wrongful death damages under this claim.

/ / /

/ / /

## SECOND CAUSE OF ACTION

## Custom, Practice or Policy Causing Violation of Civil Rights (42 U.S.C. § 1983)

## (Plaintiff against all Defendants and DOES 1-10, inclusive)

31.   Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

32.   Defendant COUNTY is, and at all times herein mentioned has been, a public entity and an incorporated municipality duly authorized and existing as such in and under the laws of the State of California and at all times herein mentioned, Defendant COUNTY possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the LASD and its tactics, methods practices, customs and usages.

33.   At all times herein mentioned, Defendant DOE Deputies and each of them, were employees acting under the COUNTY's direction and control, who knowingly and intentionally promulgated, maintained, applied and enforced the continuation of policies, customs, practices and usages in violation of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution. Said customs, policies, practices and usages at all times herein mentioned required and encouraged the employment, deployment and retention of persons as peace officers, who have demonstrated their brutality, dishonesty, and numerous other serious abuses of their powers as peace deputies for the COUNTY.

34.   The unconstitutional policies, practices or customs promulgated, sanctioned or tolerated by Defendant COUNTY and LASD include, but are not limited to:

    a. Defendant COUNTY and LASD tacitly condones and encourages use of excessive force against citizens;

    b. Defendant COUNTY and LASD tacitly condones and encourages unlawful arrest of citizens;

    c. Defendant COUNTY and LASD tacitly condones and encourages denial

      of adequate medical care for citizens;

d. Defendant COUNTY and LASD had knowledge, prior to and since this incident, of similar allegations of wrongful and unlawful battery, dishonesty and improper tactics, and corruption by LASD employees, including the individual Defendants herein, and refused, with deliberate indifference, to enforce established administrative procedures to ensure public safety, protection of citizens' rights and the DECEDENT's liberty interests;

e. Defendant COUNTY and LASD refused to adequately discipline individual employees found to have committed similar acts of misconduct as alleged in this Complaint;

f. Defendant COUNTY and LASD refused to competently and impartially investigate allegations of abuse and misconduct alleged to have been committed by COUNTY and LASD employees;

g. Defendant COUNTY and LASD reprimanded, threatened, intimidated, demoted and fired employees who reported acts of abuse by other COUNTY and LASD employees;

h. Defendant COUNTY and LASD covered up acts of misconduct and abuse by COUNTY and LASD employees and sanctioned a code of silence by and among LASD deputies;

i. Defendant COUNTY and LASD failed to adequately supervise the actions of employees under its control;

j. Defendant COUNTY and LASD tacitly condones and encourages a conspiracy of silence among its employees for the purpose of concealing and furthering wrongful and illegal conduct; and

k. Defendant COUNTY and LASD fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which by December 7, 2018, and thereafter, represented the unconstitutional policies, practices and

customs of the COUNTY and LASD.

35. Defendant COUNTY and LASD's unlawful use of force and denial of adequate medical care alleged herein are part of a practice and pattern of the COUNTY's unlawful mistreatment and criminalization of mentally disabled persons.

36. The following list exemplifies the aforementioned policies, customs, practices and usages of Defendants COUNTY and LASD:

  a. The LASD has a history of deputy misconduct. An 86-page report by the Los Angeles County Office of Independent Review detailed allegations against LASD deputies of sexual misconduct, false police reports and lies about uses of force in its eleventh annual review.[1]

  b. The United States Department of Justice has also found that the LASD has a history and practice of misconduct that has led to grand deprivation of constitutional rights. On April 28, 2015, the LASD and the U.S. Department of Justice entered a settlement regarding allegations of long-standing civil rights abuses.[2]

  c. News reports reveal that the LASD's history of misconduct continues. On April 19, 2018, Daniel Lollis was the victim of excessive force and unnecessarily arrested by LASD deputies during a traffic stop.[3]

  d. The unconstitutional practices of the LASD lead to civil rights violations for compliant persons. LASD deputies were caught on video pushing and shoving an elderly woman who attempted to comply with a LASD deputy's request that she move from the reserved seating

---

[1] Sarah Favot, *Los Angeles Sheriff's Department annual review finds sex, lies and videotape*, WHITTIER DAILY NEWS, Jan. 23, 2014.

[2] Olivia Harris, *Los Angeles County Sheriff Department Makes Long-Standing Civil Rights Settlement*, STOCK WATCH, Apr. 29, 2015.

[3] Bill Melgen, *Lynwood Man Claims LASD Deputies Used Excessive Force During His Arrest*, FOX11 (Aug. 1, 2018, 9:37 PM), http://www.foxla.com/news/local-news/lynwood-man-claims-lasd-deputies-used-excessive-force-during-his-arrest.

section.[4]

e. The unconstitutional practices of the LASD also lead to civil rights violations for persons unaware of why deputies interacted with them. Nolan Hillis, a developmentally challenged African-American male, was aggressively approached and questioned by deputies, who then applied excessive force when Hillis response was unintelligible.[5]

f. Jury found in favor of inmates that LASD deputies used excessive force to remove the inmates from their cells.[6]

g. In January 2010, COUNTY agreed to pay a Plaintiff $900,000 to a prisoner who lost his foot due to LASD inadequate medical care.[7]

h. In October 2019, COUNTY agreed to pay a mentally challenged Plaintiff $1,300,000 who alleged excessive force and inadequate medical care.[8]

i. There is also a concern that LASD does not properly address the culture of deputy gangs that contribute to deputy misconduct. Los Angeles Times reported the LASD continues to fail in properly investigating their deputies for deputy gang groups. The LASD continues to face criticism over gang-like deputy groups and their failure to root out the agency's subculture of tattooed deputy gangs.[9]

j. In a wrongful death suit, Judge Michael P. Vicencia highlighted the concern of the deputy gangs by ruling that the LASD must reveal the names of deputies who have matching skull tattoos. There was a

---

[4] *LA Civil Rights Leaders Call for Suspension of Sheriff's Deputies in Video Taped Assault of Elderly Woman*, ELECTRONIC URBAN REPORT, May 20, 2017.
[5] *Hillis v. County of Los Angeles*, No. CV1407186 (C.D.Cal. filed Sept. 15, 2014).
[6] *Rodriguez v. County of Los Angeles*, No. 10-6342 (C.D.Cal. May 29, 2014).
[7] *Silva v. County of Los Angeles*, 215 F. Supp. 2d 1079 (C.D. Cal. 2002).
[8] *Rogers v. County of Los Angeles*, 2017 WL 10574366.
[9] Maya Lau, *L.A. County Sheriff's Department Pays Price as Clandestine Deputy Cliques Persist*, LOS ANGELES TIME (Oct. 27, 2018, 5:00 AM), https://www.latimes.com/local/lanow/la-me-sheriff-tattoo-liability-20181027-story.html.

concern that cliques within the LASD promote excessive force.[10]

k. The LASD also has a history of retaining deputies that have a known history of misconduct. The Los Angeles Times discovered a secret LASD list that includes 300 deputies with a history of dishonesty and misconduct.[11]

l. The LASD also has a practice of re-hiring deputies with a history of misconduct. LASD Sheriff Alex Villanueva currently faces criticism for the re-hiring of a deputy who has a history of misconduct allegations, is regarded as a member of a deputy gang called the Reapers and has admitted to having a tattoo that represents his membership in said deputy gang.[12]

m. Public reports also state that LASD deputy misconduct claims payouts reflect the growing distrust of law enforcement and public scrutiny concerning deputies' use of force.[13]

n. The LASD also has a history of insufficient training of their deputies with regard to proper Fourth Amendment standards for reasonable suspicion, probable cause, use of force and incident reporting.

37. On information and belief, Defendant DOE Deputies attended training programs related to making contact with mentally challenged persons prior to the incident with Plaintiff.

38. On information and belief, Defendant DOE Deputies attended training programs related to use of force prior to the incident with Plaintiff.

---

[10] Maya Lau and Nicole Santa Cruz, *Wanting to Know About Deputies' Ink; Judge Says Sheriff's Officials Must Reveal If They Know Names of the Deputies with Matching Skull Tattoos*, LOS ANGELES TIMES, Oct. 26, 2018.
[11] Maya Lau, Ben Poston, and Corina Knoll, *A Times Investigation; A Secret List of Deputy Misconduct*, LOS ANGELES TIMES, Dec. 10, 2017.
[12] Maya Lau and Matt Stiles, *Rehired Deputy Admitted Having Tattoo; Swirling Misconduct Allegations and Claims of Secret Societies Put Sheriff Under Scrutiny Over Reinstatement*, LOS ANGELES TIMES, Mar. 29, 2019.
[13] *Sheriff's Payouts*, EL PASO TIMES, Apr. 10, 2017.

39.     On information and belief, Defendant DOE Deputies attended training programs related to investigation of crimes and lawful arrest prior to the incident with Plaintiff.

40.     Despite Defendant DOE Deputies receiving training that was designed to prevent the conduct described in this Complaint, DOES 1-10 violated DECEDENT's and thereby Plaintiff's constitutional rights as described in this Complaint.

41.     Prior to the incident, COUNTY knew that its training program was insufficient to prevent the type of civil rights violations DECEDENT and Plaintiff suffered but did nothing to prevent said misconduct.

42.     The aforesaid policies, customs, practices and usages described in this Complaint were the moving force that caused DECEDENT and Plaintiff to be subjected to the unconstitutional acts of Defendant DOE Deputies on December 7, 2018.

43.     By reason of the aforesaid policies, customs, practices and usages, Plaintiff's rights under the Fourteenth Amendments to the United States Constitution were violated.

**WHEREFORE**, Plaintiff requests relief as hereinafter provided.

## PRAYER FOR RELIEF

1.     For compensatory (or general) damages, including both survival damages and wrongful death damages under federal and state law, in an amount to be proven at trial;

2.     For funeral expenses and loss of financial support;

3.     For punitive damages against the individual defendants in an amount to be proven at trial;

4.     For prejudgment interest;

5.     For an award of general and special damages in the amount to be proven at trial;

6.     For reasonable costs of this suit incurred herein;

7. For reasonable attorney's fees pursuant to 42 U.S.C. § 1983 and costs as provided by law;

8. For such further other relief as the Court may deem just, proper and appropriate.

Dated: March 2, 2020                                   **PLC LAW GROUP, APC**

                                ___*/s/ Na'Shaun L. Neal*_____
                                Peter L. Carr, IV
                                Na'Shaun L. Neal
                                Attorneys for Plaintiff Donnelle Wear

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby respectfully demands a trial by jury on all issues and claims.

Dated: March 2, 2020						**PLC LAW GROUP, APC**


							___*/s/ Na'Shaun Neal*_____
							Peter L. Carr, IV
							Na'Shaun L. Neal
							Attorneys for Plaintiff Donnelle Wear